The Honorable, the Judges of the United States Court of Appeals for the Fourth Circuit. Oh, yay, oh, yay, oh, yay. All persons having an unmanned form of business before the Honorable United States Court of Appeals for the Fourth Circuit are admonished to draw now and give their attention, for the Court is now sitting. God save the United States and this Honorable Court. Good morning, Counsel, or actually, good afternoon. We're happy to have you with us, even if not in person. Our colleague, Judge King, is on the phone, and we'll try to defer to him when he wants to be asking questions. So we're happy to hear argument in our first case, United States v. Johnson, whenever you're ready, Counsel. Your Honor, may it please the Court, this is actually W. S. v. Daniels, that's what he had listed as the first case. Oh, I think you're right. You are absolutely right. It's a good thing to straighten me out at the very beginning. Well, I have difficulty arguing that other case, Your Honor. Well, I don't know, you know. Thank you, Your Honor. May it please the Court, my name is Andrew Lindeman. I represent the appellants and cross appellees, Cassandra Daniels, Ursula Best, and the South of Social Services. Your Honor, this case was brought out of a lawsuit that was brought by a former foster care child who resided in a foster care facility run by the Boys Home of the South, which was originally a co-defendant in the case, but settled out during the litigation itself. This case involved federal claims brought under the 14th Amendment under the Substantive for Substantive Due Process, alleging that both employees of Boys Home as well as employees of the South Carolina Department of Social Services, Ms. Daniels and Ms. Best, failed to protect W.S. and failed to provide him treatment. The allegations were that he was sexually abused while he was a resident at the Boys Home of the South. This case was ultimately tried to a verdict. The jury returned a verdict on the federal claims against both DSS individual defendants, Ms. Daniels and Ms. Best. They returned a verdict for both actual and punitive damages. They also returned a verdict on the state law gross negligence claim against the Department of Social Services for $400,000. As I indicated, Boys Home of the South had settled out prior to trial, actually during discovery in the case, and ultimately paid a total of $825,000. So one of the issues that arose post-trial was whether or not the defendants, my clients, were entitled to a set-off for the settlement paid by the settling defendant, Boys Home of the South. Ultimately, what the trial judge did was he granted a set-off pro tanto for the $400,000 that was returned against the Department of Social Services on the state law claims, but he found that there was no set-off or found that set-off would be, quote, not applicable to the Section 1983 case. So our first issue on appeal involves whether or not the defendants, Best and Daniels, were also entitled to a set-off from the settlement paid by the Boys Home of the South. There are two other issues that we have also raised, one regarding the application of the Parrott-Hudson Doctrine, which I'll only touch on briefly because in the interim, since briefing in this case, there has been a decision by a panel of this court finding that the Parrott-Hudson Doctrine does not apply to a substantive due process case. So you don't, excuse me, counsel, you don't pursue that argument anymore? I reserve the right to, I'm not waiving that argument because there's a likely petition for cert in that case going to the Supreme Court. So I don't want to withdraw or waive my argument on that issue, but I also recognize that there is a panel decision, and I'm happy to discuss it at length. No, I just want to know your position. Thank you. I definitely don't want to waive it, Your Honor. And then lastly, there's a number of issues dealing with the attorney's fees award that was made by the district court. So touching on the first issue dealing with the setoff, as I indicated, the Judge Coggins did allow for a $400,000 pro tanto setoff on the state law claim, but found that the setoff under Section 1983 was not applicable, as he put it. His ruling- He said that 1983 was different. There are policy considerations, because it's a civil rights violation, constitutional violation, that he wasn't going to give you the setoff, and he had authority for that, did he not? Well, there's no authority for that within the Fourth Circuit, Judge King. Now, he basically, and it was a very brief paragraph that he dealt with that issue, essentially stated three points all without going into great detail, simply a sentence to each of the points. First of all, he found that the constitutional duties that were owed to W.S. by Daniels and Best were different than the duties owed by the Boys Home of the South, which we disagree with and believe that we can show differently. He also found that the plaintiff raised different claims with respect to Best and Daniels as compared to the Boys Home of the South. And then lastly, he indicated that allowing a setoff would be inconsistent with a policy of deterrence. Dealing with that last issue first, since that's what you raised, Judge King, I would point out to this court that there is precedent in the Fourth Circuit, a case called Norris v. Bland that was decided in 2016, allowing a setoff in a 1983 case. You don't mean precedent, you mean there's an unpublished opinion on that subject. It's certainly not precedent. Well, Judge Wynne, I agree it's unpublished, but it's the only opinion that addresses that issue within the Fourth Circuit. I want you to hear me clearly, it's not precedent. Right, I understand. Is it best perhaps for guidance, this panel does not even have to even look at that opinion if we don't want to. You understand that. I understand, it may be of good guidance, but I want to make sure you understand it's not precedent. Sure, I was going to make the point that it's persuasive, at least I hope it's persuasive. You certainly can do that. But ultimately, there's authority from other circuits as well that have allowed for a setoff from a 1983 claim. But now you go there, there are some circuits that have held just the opposite, and they're pretty clear at doing that. And even when you look at the unpublished opinion here, that opinion didn't even discuss a setoff in a 1983 claim. So I mean, when you're looking at 1983 type actions, they are fundamentally different from what we're dealing with in the South Carolina type law, and there are ways in which you can look at it. But you've got the second, the fifth, and the tenth circuits that have gone otherwise on it. So, you know, point's well taken in terms there's something out there to that point. But I wanted you to at least to recognize that there's a balancing of opinion out there. And I understand you're trying to persuade us to go in one way as opposed to the other. That's correct, Your Honor. And ultimately, to the extent that there is a deterrence effect, I mean, obviously a deterrence effect is satisfied by what was returned in this case, a punitive damages award. So ultimately, there's also strong public policy considerations, and we cited the U.S. Supreme Court case in the EEOC versus Waffle House, where the Supreme Court stressed that no one should receive a double recovery. So you have that policy consideration at play as well. So in this particular case, clearly W.S., through its settlement with Boy's Home of the South, recovered in excess of what ultimately the jury in this case, when it went to trial, determined his damages to be. And that would, I would submit, be an appropriate case for a setoff. There's not any type of violation of the deterrence effect, and in fact, it satisfies, as I indicated, the other aspect of policy, which is preventing a double recovery. I did want to also make the point... But if you're focused on Section 1983, Section 1983, you know, what's often lost is how that whole section came about and the purpose of it. I mean, it's clear that Congress, in enacting that, was wanting to make sure that the defendants would pay for that wrongdoing of violating someone's constitutional rights under color of law. And that's essentially what the purpose of Section 1983. It's not concerned about double recovery or enrichment or that sort of thing. So when you focus on that policy, as Judge Coggins did here, and as did the three circuits that I mentioned to you, it would seem that if, well, let me make sure. What is our standard of review on this particular issue? Standard of review is clear error, Your Honor. Well, and I knew that, but I want to make sure we were in agreement on it. So how do we find clear error in the judge making that decision? Well, Your Honor, again, it's going to depend on how this court thing comes down on whether or not you allow a setoff. And I recognize that Morris v. Bland isn't precedent, but it certainly is persuasive to make that point. And we have the Dion case, too, which is a little bit more unusual, but there also was a setoff in a 1983 case in the Dion versus, I believe, the city of Baltimore case as well. So there is some, and that, of course, was a published decision, so it is precedent. I did want to make the additional points, however, that the other points that were raised in a conclusory manner by Judge Coggins about the constitutional duties being different, that is not supported, I would submit, by the record. Clearly, the same 14th Amendment claims were asserted against my clients as were asserted against the boys home of the South. In addition, there were the same, to the same claims, there were the same allegations of damages as well. Let me ask you a general question there. So the boys home of the South settled this. You then bring in the setoff aspect of it, you get $400,000 setoff. You know, I think when you all look at this, it doesn't mean that, I guess, social services goes free on it, because wouldn't there be some sort of indemnity that you would owe to boys home, or, you know, I'm almost wondering why it wouldn't be that they wouldn't be a part of this action, because they paid something you should pay. How did that work out? I mean, did you, do you just pay nothing, or, and boys home paid $825,000? Well, basically, if the full setoff is provided, yes. I mean, because that's what it took to make. You owe nothing to boys home, even though they paid it, and there's a setoff. Well, that doesn't sound right. Well, we're joint tortfeasors, and so ultimately, if one joint tortfeasor pays, and there is no right, of course, of contribution. I'm familiar with the joint and severable type liability aspect of it, but my question is indemnity. Would not boys home be entitled to recover that $400,000 from you? Well, boys home in the South would have to show that they had absolutely no culpability and were paying based upon their relationship with Department of Social Services. No such claim has been made. I'll let them handle that, but I'll tell you that there's absolutely something wrong with that situation there, and I know that in setoffs, dealing with indemnity, even when you have Medicare, other than governmental claims, if a joint tortfeasor pays entire judgment, it doesn't mean that the other one now can walk away and do nothing. You can actually go against the other person, but that's an issue outside of you. I was just curious as to the whole $0 that is being paid by your client, but go ahead. I see my time is up, Your Honor. It is up. Would you like to use some of your rebuttal time? Yes, Your Honor. We'll use it if you count against your rebuttal. Okay. Oh, no. I'll wait for rebuttal, Your Honor. All right. Thank you. All right. Thank you. We'll hear from the other side now. Counsel? You're muted. Mr. Butcher, please unmute yourself. I apologize for that. My name is Robert Butcher. I'm one of the attorneys for WS, co-counsel Heather Height-Stone and Thomas Height III are watching on YouTube at this time. I appreciate you having us. The first thing I wanted to address is, yes, South Carolina Department of Social Services is getting a windfall with not having to pay anything if the setoff remains, but I do want to address the issue of the setoff. In South Carolina... But that would not... Let me just be clear in terms of my statements on that. That doesn't affect you. If they say the total damage was $800,000 and they just didn't have to pay that $400,000 because it's set off, you still got $800,000. So that's between them and Boys Home to deal with that little indemnity thing that I was talking about. So I want to be clear. I wasn't saying you should get it under this analysis if the setoff is proper. I understand, sir. But I believe that... Well, I do understand that. But what I do want to emphasize is that after we settled with Boys Home in the South, the first bit of discovery which was sent, and you can find that at the Joint Appendix 206 and 224, we set discovery requesting information regarding all of WS's claims that ended up being in the amended complaint. And BSS, they delayed and objected and refused to produce for over a year. And that's part of our issue with the court not allowing us to freely amend. But all of that should be a signal to the court that those are all the injuries. And if you look at South Carolina setoff law, you know, setoff allows the defendant a pro tanto reduction of judgment for the same cause of action and the same injuries, correct? And the other thing is, as a matter of law, there's no setoff when a settlement is for a different injury or different claims. So what we have are a small bucket of apples, which was what BSS did, because we were only allowed to try four injuries that were in the original complaint. So I want to admit something. I found your argument very hard to follow. But if I understand you correctly, this is the way I see it. You're saying that the $825,000 settlement figure compensated for dozens of injuries, all kinds of injuries, both pled and unpled, as well as many unrelated claims. And therefore, it's different than this one that dealt with specific ones. Is that what you're saying? I am, your honor. And here's why. When we took this case. Did this one deal with three incidents? How many were on that $4,000? It was, well, I would say there's res judicata and we tried four incidents and we won three of them. You won three. So the $400,000 recovery that was all set was related to three incidents. Yes, sir. But, your honor, if you remember WS's testimony, he was sexually abused over 100 times by 13 other children, 11 that we could identify where social services had noticed that those children sexually acted out on other children beforehand or were dangerous. And it happened over the whole three year period. The dates were- How many incidents were covered by the settlement? Four, oh, all of them. Remember- Well, how many? I've asked you that four times now. I'm sorry. How many? 21, your honor. If you look at the amended complaint, it said JA 1029 through 1131. 21 instances for the settlement and three incidences for the verdict. Is that right? Correct, your honor. So they all said three, the settlement of $400,000 to 21. Then is that the basis for your claiming that you want your $400,000 back? Well, yes, your honor. Or the district court could be instructed to equitably identify what Boys Home of the South paid for and subtract from that. So you're saying you didn't calculate it properly? Yes, sir. There was no calculation. He just, the district court- Well- I'm sorry, sir? It was a calculation. He said the $400,000 is set off. He came to the figure of $400,000. But you're challenging that, right? Yes, sir. And we presented the evidence and showed that all these other occurrences happened where WS was sexually abused by these 11 other children over a three-year period. So the- Wait, let me be clear. Are you admitting that the three incidents here were covered under that agreement? Of the 21, were the three here covered? Oh, yes, sir. Isn't that your problem? Isn't that your problem? Isn't that your problem? They were covered under that. You just say, and you didn't delineate what amounts were being assigned to each one of them. That agreement doesn't do that. That's just a broad agreement. It has a figure, and we don't know how much is assigned to it. And I don't know how the court goes back now and, as you say, equitably decide that this is worth this and this is worth that. Your Honor, there has to be some mechanism, or as the South Carolina courts have shown in Hawkins versus Pathology Associates, in cases like that, there is no set off. If you cannot determine the total loss and, or equitably divide the total loss. And I think receiving- Counsel, I thought you just told us that the 400,000 did represent the total loss. That is, it represented, covered all the incidents. I'm misunderstood. It represents the total loss that a jury assigned for those four incidents. I thought you said it was three incidents. Well, there's, I mean, they decided there was an incident on March, in March of 2011. But they found on March 2009, June 2009, and November of 2010. So those three incidents, the jury decided was worth 400,000. Your problem is that you have a settlement agreement lump sum. You didn't put specific amounts for each one of them. That's the problem we now have. And now when you're dealing with the set off, the judge, again, what is our standard review? Clear error? And so when we're looking at that, we've got to discern, you know, what did the judge do here under the circumstances? There's no indication of any dollar amount here. And that's a major problem. And your honor, I think what the courts and even the restatement and Restivo versus Hesselman and Dobson versus Camden say, there's no set off if you can't divide it up, if you cannot determine the, you know, what the settlement is for. Instead, the judge basically rewrote the contract we had with Boy's Home of the South regarding the settlement. And now settlements, you get what you can take. There's very often little parsing. The only time you really see parsing is in a wrongful death where someone tries to shove everything towards survivors so they can get a big verdict on the jury and not have any set off. And then you see the courts rewriting those contracts to say, well, I want to ask you a question, though, regarding, if you will, I know the judges may come back to it, but attorneys fees. Yes, sir. That the the court here found that your billing practice was somewhat concerning. Look at this so-called block building bill billing. And can you help us as to why the court made this exception for you on this block building? I'm not sure he didn't explain it, your honor. And I think what he did was he took the different Kimbrough factors and I think he just lumped together the different objections the SS had and he really didn't delineate it in the order to give us some sense of what he was doing. So I think so. So you're telling us we ought to send it back and ask them to do so. I think that's probably I that's the most logical and fairest thing, I believe, you know, it is what it is. I mean, you know, yes, certainly. Counselor, do you think there is any possibility in the world that you would get greater fees than you've been awarded? I certainly believe there should have been enhancement. That's not what I asked you. We're dealing with the what's happened now. We're looking at it retroactively. But you want us to send this back to the district court to reaward fees. I guess not. No, your honor. Sounds like to me that's what you just said. And I'm sure the defendant is going to agree with you on that one. I'll walk backwards on that. But you know. You want to leave the fee thing where it is. Yes, I appreciate that. That's your position today. You also want to amend the complaint and start all over at one point. Certainly. Does that mean you're going to give all the money back and the verdict back and start all over? Well, I think we have res judicata on the two individual defendants under 1983. There's really nothing else we can do with those claims. And there's no reason to try it. They tried them for the specifics. I would say you walk back that claim about amending. You better try to hang on to your verdict. And I understand that. I believe if, I mean, I think the amendment was, it kept us from being able to try all the injuries. And which were set off. And so we didn't have the same. That's where it goes back to your claim on the set off. You'd like to have a set off vacated and reinstated or gone over again. Is that what you want? Right. And I think that reflects South Carolina law. You don't want to have to try all this again, do you? I don't want to. But I think that would be the fairest thing to WS. So you're appealing the case where you won. You're going to give that $150,000 settlement back? Well, the settlement can't come. I mean, we can't do that again. May I address the 1983 issues as it pertains to set off? Sure. I think 1 of the things, and I didn't really see the big picture until just recently, is if you look at Northwest Airlines versus Transportation Workers Union and Texas Industry versus Radcliffe Materials. Those cases, they deal with all the Sherman Act, the Clayton Act for Texas Industries, and they deal with Equal Pay Act and Title 7. And that's where 1988 is applied. And it teaches us that there are the 3 steps. DSS or the DSS defendants, when they talked about the 1983 set off, they did step 1 and step 2, which was federal law. Is there a federal law? 2, is there a state law? And then they skipped test 3. My time is up. May I continue for a minute? You can continue. It takes up your rebuttal time. Thank you, ma'am. And when you have the—and DSS didn't even address this issue in their brief. It doesn't conflict against the policy, which you all went to. But I think that's where we get the Fourth Circuit cases, which aren't necessarily 1983 cases. But that's where you're getting the jurisprudence from in Hepburn, Pinchback, Gellin, and Woodson. And that's where that logic comes from, where the court ruled that there is no contribution in those cases, because contribution and set off being very similar, that it is, you know, that it contradicts the congressional purposes. Last thing is with the Morris case. If you look at, I believe, Burke, they talk about Big Elk. Big Elk had the same issue as Morris. Morris did—or in Big Elk, they didn't argue about set off in 1983. And the court said that's not dispositive and it's not applicable here because the circuit court didn't address it. And plus, there's a reason why it's unpublished. Thank you. Thank you very much. You have some time left for rebuttal. Counsel, do you have rebuttal? Mr. Linden. I did the same thing. Thank you, Yonah. Yes, I do have rebuttal. Yonah, touching on the set off issue with respect to the $400,000 on the state law claim, I would call to the court's attention that a couple of points. Number one, the complaint itself alleges the exact same thing events—and there are four different occurrences, four different events— against both Boy's Home and against the DSS. So there is absolutely the same claims that are pled. And what is the actual basis for them being identical? He was in the Boy's Home and your client was supposed to be supervising? Right. All of the events that are alleged here is while he was a resident of the Boy's Home, which was from 2008 to 2011. Right, okay. And then the key language in the release itself, which is at Joint Appendix 2378 and 2379, there are a number of recitals I want to call to your attention because they specifically indicate that what the settlement was for were the claims that were litigated. In fact, the very last recital says, this agreement pertains solely, stressing the word solely, to the claims asserted against BHOTF, Boy's Home of the South, defendants in the lawsuit as the plaintiff expressly reserves the right to continue litigating his claims against SCDSS defendants. And then there's, previous to that, there's additional language that says the plaintiff has agreed to resolve the claims asserted against Boy's Home of the South defendants in the lawsuit pursuant to the terms and conditions set forth below. So this is a bit of an after-the-fact argument suggesting that there were additional claims that could have been brought and that were settled. He said it was 21 incidents. He said incidents. He didn't say 21 claims. 21 claims were settled for $850,000 and the verdict $400,000 related to three or four. He was ambiguous on that. The complaint against Boy's Home of the South, Judge King, alleges the same four incidents that were asserted against the DSS defendants. In fact, there were more outside the complaint. They said it was settled 21 incidents, is what he said. Well, there's nothing that indicates that in the document itself. And as I indicated, the recital says, this agreement pertains solely to the claims asserted against Boy's Home of the South defendants in the lawsuit. But the language that you read to us also seems to indicate that there are other claims. This settlement only addresses these. Now, maybe he never pledged them, and I don't understand that. But I think that the language you read us gives a clear indication that there are some other claims. Maybe he never pursued them. But they're only willing to be bound by the settlement with respect to the ones that they list. They make a big deal of that, right? And that's the language in the agreement itself. And that's the language, obviously, that Judge King relied on. Other claims that this settlement does not settle? The fact that they're particularly reserving this argument? Well, there's not an indication in the release that there are other claims being reserved or carved out, Your Honor. Well, let's be clear. It does say, resolves all claims asserted, could have been asserted, or should have been asserted. That's right. And at the point in time that there was a settlement, of course, the statute of limitations had also run. There could not have realistically been an additional lawsuit that could have been brought at that point in time. Well, in any event, there wasn't one. And there wasn't one. And you don't need a statute of limitations in order to be able to settle a case. I mean, the statute of limitations could run. You can settle the case. That doesn't apply in a settlement agreement. So it could have been asserted. It could have been asserted. But you're saying you'd have to bring the affirmative defense of the statute of limitations, which I guess any good lawyer is going to do. But my point is, is the settlement does not kick out those things. It just takes that off the table. So all those that could have been asserted, whether it was statute of limitations or not, you can't even bring them at all. But the key point, I think, Judge Wynn, is what Judge Coggins looked at, and I believe looked at correctly, and of course, again, standard review, as you pointed out, is clear error on this, is comparing the actual allegations against Boar's Home and against DSS in the complaint. And they are the same. I want to be clear, just because it seems to me your strongest point is it's a lump sum settlement. It doesn't delineate what the fees are going for at all. And the other side has indicated they are included in there. Those three or four claims or whatever is including that settlement, and it settled all of them. So that seems to me, set off probably should be given. Because if they didn't want to be set off, they should have delineated what it was. And I think that would be a different case if each one of those had been given an amount, and then your three had an amount there, I think it would be more of a problem for you. But you're correct that there are not any claims that are specifically delineated in that release. Well, counsel, I may have misunderstood this whole case. We didn't get off to a great start when I called the wrong case. So it might not be my day. But I thought the argument of the other side was that their 1983 claims were different than their state law claims. And you know, you're an experienced lawyer, that you can have the same factual predicates. But if a statute or a common law duty, for example, gives you different rights or gives you against the other side, you can make those same factual statements be part of the different arguments, the basis for different arguments. Isn't that so? Well, the point I was trying to make was to show that as a part of their cross appeal, they're challenging whether or not the $400,000 set off should have been allowed. We believe that that was appropriate. Our argument was also that the judge should have allowed an additional set off for the amount. I see. We're dealing with a lot of set offs here. Right. A lot of different set off arguments. And real briefly, I see I'm running out of time here. I did want to touch on the attorney's fees issues. Obviously, they're pretty key issues as well. There were a number of problems with the block billing. Judge Wynn pointed out that judge created an exception for these plaintiffs and did not really spell out any basis for that. I believe that's clear. So what do you think we do? You think we should just send it back on that just to have the judge explain that part of it? Well, I think you could send it back on that. But there are other issues that he also didn't address. He didn't address, number one, whether or not there should be a set off. And we relied on the Corder v. Brown case for attorney's fees that were paid under the settlement to Boy's Home. He didn't take into account the limited amount of success based upon pre-trial negotiations. Well, he cut the fees by a third, didn't he? He cut the fees by a third. But of course, the fees were so, there were so many hours and the block billing didn't spell out what exactly they did for these fees. They were 86 days of more than 14 hours a day billed to this case. There were well over 2,000 hours by one lawyer billed to this case. And of course, the block billing didn't allow a determination to be made. Ultimately, there were issues regarding work that was done on the Boy's Home in the South claim, which obviously my clients didn't have to pay for. And obviously, there was work done on the state law claims, which doesn't give rise to recovery of attorney's fees. So he did knock off one third, but our position is that is not enough given the circumstances and that there are a number of issues that he simply didn't address. Okay, thank you very much. I'll let you go over 43 seconds. So you can have an extra one minute and 43 seconds, but then you use some of your rebuttal time first time around. Thank you, Your Honor. First, I wanted to address and make sure you understand that we didn't really have a normal client. Our client was between the ages of eight and 11. And not only that, he had been sexually abused. So we came in with a certain set of facts. And as we progressed in the case and as we gained trust with our client, he told us about the other sexual incidents. That's why when we started the discovery in January 27, you look at those discovery requests and we're asking about all these other boys who had sexually abused him. You don't get everything with these children. They've been harmed, they've repressed things, and they don't have a great memory because they have repressed things. So you precluded from bringing a separate lawsuit for those? No, we tried to amend timely against the South Carolina Department of Social Services. DSS, the agency, never raised the statute of limitations argument when we tried to amend. That's a whole different question. I don't want to get into statute of limitations. I'm just saying you're complaining about you discovered some other incidents and stuff. And I'm asking, does res judicata preclude you from going and dealing with those outside of this? I think the court can say that oh, it's res judicata on the four issues. Well, let's decide that outside of this because that's not one of the issues in this case. Other incidents? Yes, sir. If you look at June 14, 2018, we tried to amend. That's a JA 10011. In the amended complaint, of course, you can find a JA 1027. Well, you were bringing additional incidents or claims or whatever you call them? Yes, sir. And we were within the discovery period. How many were you alleging in your proposed amended complaint? I believe it would have been 17 new ones. That's where you got the 21. You were going to go, you had four, and you were going to add 17 more. Yes, sir. Right? Correct. And your honor... So you settled, when you settled for the $850,000, that was for the 21 incidents included in the complaint and the proposed amended complaint? Yes, sir. And the record supports your saying yes, sir, on that? Yes, sir. That is why when Boys from the South settled, they said for everything from 2008, May 2008, all the way to April 2011, they wanted to cover all that. It's not in evidence what was discussed in the settlement, but I think you can, once again, look at our discovery and look at what we tried to do and that should show and signal to the court that all our claims, we tried to prosecute. And so that's why we objected to the judges taking away the $400,000 from DSS because he didn't try and either itemized, how would we have gotten the defendant who was denying liability in the settlement to say, oh, let's go ahead and tack it up to these incidents? I mean, then if you guys say that we should have done that, how is that going to harm settlements in the future as a policy? What about you doing it? You're going to do a little different next time, aren't you? If I do. I mean, that's kind of, well, no, when it comes to settling a case, you're going to, I mean, it doesn't reflect that you kind of felt, it doesn't reflect that you understood a set-off could apply to this. No, we knew a set-off could apply, Your Honor, but we also didn't know how much liability DSS had until, and we still never got all the documents in the case, but we were able to identify 21 incidents where DSS knew about children being dangerous and continued to place our child with them. So you were expecting a much higher verdict? Well, no, because we didn't get to try all our claims. Because, you know, I mean, we knew that the minute, I mean, DSS, they knew we had these claims, they fought them, but they also knew that the set-off law said, if you don't have the same injuries, if one is a large pool of injuries and one's a small pool, that the court either, if they can see something concrete, they can carve out of it. You didn't reasonably expect a higher verdict than what you got on this for a 10-year-old being raped three times in a home, and you've got a supervisory authority there allowing it. You thought it would be $400,000? Your Honor, it just hurts my ego to say, yeah. I got that. But there's my sense of something, I don't know, to believe that you didn't think you were going to get a higher verdict than that. I don't know what all the evidence was. I didn't go back and read that transcript and all that. I'll tell you that. But I thought that was, well, I'll leave it alone. Well, we're in South Carolina. But we gave it a shot. They don't like it in South Carolina either. Yes, Your Honor. The other thing is, one, under Rule 16, we should have had some comfortable notion that we would have been allowed to amend within the scheduling order. And the court, they denied us the ability to amend. What was the abuse? What was the abuse of discretion by denying it? Oh, because the Fourth Circuit says that amendment is a mandate. How many times did the district court give you the opportunity to extend the deadline in the scheduling order? Six times when we tried to amend. But, Your Honor, one of the things, we did not get our motion to compel and get the evidence until just short of our amendment. And I can, I mean, you know, from the time we issued discovery until the time they produced the last bit after the motion to compel, 484 days passed. And we were begging. And you saw the letters and the emails and the motions where we were begging the court to allow us to get the discovery so we could amend. And we mentioned it. When did you make your first motion to compel? We weren't allowed to file a motion to compel until I believe it was October of 2009. By then, we'd sent five emails to chambers asking for a discovery conference. And in two of the motions amending the scheduling order, we advised the court that we can't amend until we get the information and the discovery. And DSS... Let me ask you a question. Just make sure I understand what you're asking for. You're saying you want us to find a court abuses discretion by not granting your leave to amend. If we give you that, don't we have to require the court to vacate the jury verdicts here along with the attorney fees in this case? Given that you prevailed and received the award, is that really the relief you want? I think if... I mean, how do we get around it? If we go back and say the abuse discretion but not amended, then we got to vacate the whole thing. Is that where you want to go with this? I think if... You don't want that, do you? If the court says that set off was inappropriate under South Carolina law because the injuries were different, I think we'd be willing to forego our amendment arguments. You're trying to negotiate with Judge Wayne. That doesn't sound very fair to me. It doesn't sound right to me. I've never heard of such a thing. As a pick and choose which one you win in the light most favorable to you, that doesn't work that way. We can't do that. If you come and make an argument that says there's an abuse discretion amendment, we find that and at the set up, we don't come back and say, well, since you're going to be better off with this, we're going to just ignore it. That doesn't work that way. Thank you, Your Honor. You came here for everything. I don't think you did. Not if you want that right there. You came here for nothing, it sounds like to me. Thank you very much. Thank you. I think your time has expired. We appreciate your arguments, both of you. And I'm sorry to uphold the wrong case to begin with. We'll take the case. If we were in Richmond, as you know, we would be coming down and shaking your hands. But circumstances don't allow it now. But we wish you well and stay safe. Thank you very much. And thank you, Mr. Lindeman. Thank you.
judges: Diana Gribbon Motz, Robert B. King, James A. Wynn Jr.